UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

Case No. 14-MD-01720 (JG) (JO)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This Document Applies To:

WAL-MART STORES, INC., WAL-MART
STORES TEXAS, LLC, WAL-MART STORES
EAST, LP, WAL-MART STORES EAST, LLC,
WAL-MART LOUISIANA, LLC, WAL-MART
STORES ARKANSAS, LLC, SAM'S WEST,
INC., SAM'S EAST, INC., WAL-MART.COM
USA, LLC, VUDU, INC., INKIRU,
INC., OZARK SPIRITS, LLC, GREEN RIVER
SPIRITS, LLC, and QUALITY LICENSING
CORP.,

Case No. 14-CV-2318 (JG) (JO)

                      Plaintiffs,

        v.

VISA U.S.A. INC., VISA INC., VISA
INTERNATIONAL SERVICE ASSOCIATION,
VISA EUROPE LIMITED, and VISA EUROPE
SERVICES INC.,

                    Defendants.

---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS VISA EUROPE LIMITED'S AND VISA EUROPE SERVICES INC.'S
## <u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

James R. Warnot, Jr.
Kate Z. Machan
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000 Telephone
(212) 903-9100 Facsimile
james.warnot@linklaters.com
kate.machan@linklaters.com

*Attorneys for Defendants Visa Europe
Limited and Visa Europe Services Inc.*

September 5, 2014

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………………..ii

PRELIMINARY STATEMENT........................................................................... 1

BACKGROUND.................................................................................................... 3

    A.    VEL and VESI........................................................................................... 3

    B.    Relationship Between Visa Europe And Other Defendants........................... 3

    C.    Substantive Allegations............................................................................ 4

ARGUMENT ........................................................................................................ 5

I.    PLAINTIFFS' ALLEGATIONS AGAINST VEL  AND VESI ARE FACIALLY DEFICIENT ................................................................................................ 6

II.    VEL IS NOT SUBJECT TO IN PERSONAM JURISDICTION IN THIS COURT ............ 7

    A.    VEL Is Not Subject To General Jurisdiction In This Court ........................ 9

    B.    VEL Is Not Subject To Specific Jurisdiction In This Court...................... 11

    C.    Exercising In Personam Jurisdiction Over VEL Would Violate Due Process........... 12

III.    PLAINTIFFS' ALLEGATIONS DO NOT MEET  THE REQUIREMENTS OF THE FTAIA............................................................................................................ 14

    A.    The "Import Commerce" Exception Does Not Apply ............................... 15

    B.    The "Domestic Effects" Exception Does Not Apply ................................ 16

IV.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS......... 18

# TABLE OF AUTHORITIES

## CASES

Arneil v. Ramsey,
550 F.2d 774 (2d Cir. 1977).................................................................................. 20

Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.,
480 U.S. 102 (1987)............................................................................................. 13

Ashcroft v. Iqbal,
556 U.S. 662 (2009)............................................................................................ 2, 5

Atuahene v. City of Hartford,
10 F. App'x 33, 34 (2d Cir. 2001) .......................................................................... 6

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
902 F.2d 194 (2d Cir. 1990).................................................................................... 8

Barrett v. Tema (1988) Dev.,
463 F. Supp. 2d 423 (S.D.N.Y. 2006), aff'd, 251 F. App'x 698 (2d Cir. 200)................ 6

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).......................................................................................... 2, 5

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985)............................................................................................. 13

Chew v. Dietrich,
143 F.3d 24 (2d Cir. 1998)................................................................................... 12

Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42 (2d Cir. 1991).................................................................................... 5

Daimler A.G. v. Bauman,
134 S. Ct. 746 (2014) ................................................................................... 8, 9, 11

Dardana Ltd. v. Yuganskneftegaz,
317 F.3d 202 (2d Cir. 2003).................................................................................. 12

Delagi v. Volkswagenwerk A.G., 1972,
328 N.Y.S.2d 653 (1972) ..................................................................................... 11

Deutsche Zentral-Genossenscahaftsbank A.G. v. UBS A.G.,
2014 N.Y. Slip Op. 31019, 2014 WL 1495632 (N.Y. Sup. Apr. 17, 2014)................... 10

F. Hoffmann-La Roche Ltd. v. Empagran S.A.,
542 U.S. 155 (2004) ............................................................................ 14, 15, 16

Goodyear Dunlop Tires Operations, S.A. v. Brown,
131 S. Ct. 2846 (2011) ..................................................................... 8, 9, 11, 13

Halebian v. Berv,
644 F.3d 122 (2d Cir. 2011) ............................................................................ 5

Hanson v. Deckla,
357 U.S. 235 (1958) ....................................................................................... 13

Higgins v. N.Y.S.E., Inc.,
942 F.2d 829 (2d Cir. 1991) .......................................................................... 18

Howard v. Mun. Credit Union,
2008 WL 782760 (S.D.N.Y. Mar. 25, 2008) ................................................. 5

Int'l Shoe Co. v. Washington,
326 U.S. 310 (1945) ................................................................................... 8, 13

In re Intel Corp. Microprocessor Antitrust Litig.,
452 F. Supp. 2d 555 (D. Del. 2006) .............................................................. 17

Invamed, Inc. v. Barr Labs., Inc.,
22 F. Supp. 2d 210 (S.D.N.Y. 1998) .............................................................. 7

Jazini v. Nissan Motor Co., Ltd.,
148 F.3d 181 (2d Cir. 1998) ............................................................................ 8

Kernan v. Kurz-Hastings, Inc.,
175 F.3d 236 (2d Cir. 1999) ............................................................................ 6

Kramer v. Time Warner Inc.,
937 F.2d 767 (2d Cir.1991) ............................................................................. 3

Kruman v. Christie's Int'l PLC,
284 F.3d 384 (2d Cir. 2002), abrogated on other grounds,
F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155 (2004) .................... 15, 16

Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.,
753 F.3d 395 (2d Cir. 2014) ...................................................................... 14, 18

Mathews v. Kilroe,
170 F. Supp. 416 (S.D.N.Y. 1959) .................................................................. 7

In re Merrill Lynch Ltd. P'ships Litig.,
154 F.3d 56 (2d Cir. 1998) ................................................................................... 19

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
84 F.3d 560 (2d Cir. 1996) ................................................................... 6, 8, 12, 13

Poodry v. Tonawanda Band of Seneca Indians,
85 F.3d 874 (2d Cir. 1996) ................................................................................... 14

Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.,
No. 08-CV-42 (JG), 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011),
adopted by 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ................... 2, 8, 12, 14, 18, 19

Sniado v. Bank Austria A.G.,
174 F. Supp. 2d 159 (S.D.N.Y. 2001), aff'd, 378 F.3d 210, 213 (2d Cir. 2004) ........................... 17

Sonera Holding B.V. v. Çukurova Holding A.S.,
750 F.3d 221 (2d Cir. 2014), cert. denied, 2014 WL 2126639 (June 30, 2014) ................... 8, 9, 10

In re Terrorist Attacks on September 11, 2001,
718 F. Supp. 2d 456 (S.D.N.Y. 2010) ................................................................... 13

Ticketmaster-New York, Inc. v. Alioto,
26 F.3d 201 (1st Cir. 1994) ................................................................................... 13

Turicentro, S.A. v. Am. Airlines,
303 F.3d 293 (3rd Cir. 2002), overruled on other grounds,
Animal Science Products, Inc. v. China Minmetals Corp., 654 F.3d 462 (3d Cir. 2011) ............. 15

In re Visa Check/MasterMoney Antitrust Litig.,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd sub nom.,
Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005) ................... 1, 19

Vista Food Exchange v. Joyce Foods, Inc.,
1996 WL 122419 (S.D.N.Y. Mar. 20, 1996) ......................................................... 12

Yucyco, Ltd. v. Republic of Slovenia,
984 F. Supp. 209 (S.D.N.Y. 1997) ......................................................................... 6

## STATUTES

15 U.S.C. § 6(a)......................................................................................... 14, 17

15 U.S.C. § 15b ............................................................................................ 19

Fed. R. Civ. P. 4 (k)(1)(A) ........................................................................... 8

Fed. R. Civ. P. 4(k)(2) ................................................................................ 12

Fed. R. Civ. P. 15(c)(1)(B) .......................................................................... 20

N.Y. C.P.L.R. § 302 (McKinney 2008) .................................................. 11, 12

Defendants Visa Europe Limited ("**VEL**") and Visa Europe Services Inc. ("**VESI**") (together, "**Visa Europe**") respectfully submit this memorandum of law in support of their motion to dismiss the claims against them in Plaintiffs' First Amended Complaint and Demand For Jury Trial (the "**First Amended Complaint**" or "**FAC**"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Visa Europe operates a European payment services business under a license from Visa Inc. that is strictly limited to Europe. Unlike Visa U.S.A. and Visa International Service Association ("**Visa International**"), Visa Europe is not a Visa Inc. affiliate, but rather has been owned and governed by its thousands of European member institutions since 2004. Visa Europe's independent status and confinement to its European market have long been open and known and detailed in numerous public records, including Visa Inc.'s 2008 IPO prospectus, filed with the SEC. Yet only in June 2014—over nine years, 400 depositions, and 80 million document pages after this "extensively litigated" case began[1]—were VEL and VESI first named as defendants in this MDL.

There is a good reason for Visa Europe's absence from the case up until now: Visa Europe has nothing to do with the matters at issue in this case and does not belong in it as a defendant or otherwise. Indeed, in amending their original opt-out complaint, Plaintiffs have failed to add even a single allegation specifying Visa Europe's allegedly tortious acts. Instead, Plaintiffs' entire claim against Visa Europe rests on one conclusory allegation of unspecified U.S. "effects" of the rules that govern Visa Europe's European member banks' participation in

---

[1] In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig., 05-MD-1720 (JG) (JO), at *4 (E.D.N.Y. Dec. 13, 2013) (ECF No. 6124). Of course, this case and these numbers do not include Wal-Mart's previous extensive litigation against Visa International and Visa U.S.A. See In re Visa Check/MasterMoney Antitrust Litig., 297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd sub nom., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005).

its exclusively European business. FAC at ¶ 33.  This solitary sentence falls far short of meeting the pleading standards set forth in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565 (2007).  This pleading deficiency is exacerbated by Plaintiffs' grouping of Visa Europe together with Visa Inc., Visa U.S.A., and Visa International throughout the FAC.  As this Court has held, this group pleading technique is, without facts specific to each defendant, deficient as a matter of law—even when the grouped entities are corporate affiliates. See Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd., No. 08-CV-42 (JG) (VVP), 2011 WL 7053807, at *13-20 (E.D.N.Y. Jan. 4, 2011) adopted by 2012 WL 3307486, at *2 (E.D.N.Y. Aug. 13, 2012).  It is even more egregious here, where Visa Europe's relationship with the other defendants is one of licensee-licensor rather than of corporate affiliation.

In addition, VEL is not subject to in personam jurisdiction in this Court.  VEL lacks minimum contacts with the U.S. as a whole, much less this district, and is subject to neither general nor specific jurisdiction.

Furthermore, Plaintiffs have not and cannot allege that Visa Europe engages in or directly affects U.S. commercial activity of any sort.  As a result, Plaintiffs' attempt to have this Court exercise its jurisdiction extraterritorially runs afoul of the Foreign Trade Antitrust Improvements Act (the "**FTAIA**"), 15 U.S.C. § 6(a).

Finally, in light of the fact that Visa Europe was not a defendant in the long-running class action from which Plaintiffs opted out, and because no other tolling doctrines are potentially applicable, all claims arising from conduct prior to June 13, 2010 are time-barred.

2

Thus, for the reasons further explained herein, this Court should dismiss with prejudice all claims against VEL and VESI for failure to allege facts that would support any cognizable antitrust claim.[2]

## BACKGROUND

### A.   VEL and VESI

Plaintiffs have alleged few facts specifically regarding VEL and VESI in their First Amended Complaint.  Those relevant facts are: VEL is a United Kingdom company with its principal place of business in the United Kingdom. FAC at ¶ 30.  VEL is an association of over 3,000 European banks and is owned by these member banks. Id.  VESI is a Delaware corporation with its principal place of business in the United Kingdom and is a wholly-owned subsidiary of VEL. FAC at ¶¶ 31, 32.

### B.   Relationship Between Visa Europe And Other Defendants[3]

In 2004, Visa Europe was spun off from Visa International into a United Kingdom company owned by its European member banks. See S-1 at 177, 44.  It remained a member of Visa International from the time of that spin-off until the 2007 Visa global restructuring, which resulted in the formation of Visa Inc. S-1 at 59.

Unlike the Visa entities in all other regions, after Visa Inc.'s 2007 restructuring and 2008 IPO, Visa Europe did not become a Visa Inc. subsidiary; retained only a de minimis ownership

---

[2]   Visa Europe also seeks dismissal on the grounds set forth in the Visa Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Wal-Mart Opt-Out Complaint. See Brief for Visa Defendants, In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig., No. 14-MD-01720 (JG) (JO) (E.D.N.Y. June 26, 2014) (ECF No. 94).  While Visa Europe is aware that the Court has denied that motion, see Minute Entry and Order, No. 14-MD-1720 (JG) (JO) (E.D.N.Y. July 18, 2014), it asserts these grounds for dismissal to preserve its appellate rights.

[3]   The facts in this section are taken from Visa Inc.'s S-1 Registration Statement in connection with Visa Inc.'s 2008 IPO. See Decl. of James R. Warnot, Jr., Exhibit 1, Visa Inc., Registration Statement (Form S-1) (Feb. 25, 2008) ("S-1"); see also Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir.1991) (on a motion to dismiss, district court may take judicial notice pursuant to FRE 201(b)(2) of the contents of public disclosure documents filed with the SEC as facts whose accuracy cannot reasonably be questioned).

interest in Visa Inc.; and was no longer a member of Visa International. S-1 at 7, 43-44. Visa Europe's rights to use the "Visa" brand and other trademarks and to participate in the global Visa authorization, clearing, and settlement system became governed by a comprehensive Framework Agreement, which is an exhibit to and described in the 2008 Visa Inc. prospectus. S-1 at 43-44. Accordingly, Visa Europe has been wholly separate and independent from Visa Inc. and Visa International since 2008.

In summary, the Framework Agreement has three principal components: a (i) trademark license; (ii) technology license; and (iii) bilateral services agreement. S-1 at 49-50. The licenses are limited to Visa Europe's territory—*i.e.*, Europe—and require that Visa Europe and its members adhere to certain rules necessary to protect the "Visa" brand and the global interoperability of Visa's authorization, clearing, and settlement system. S-1 at 63.

**C.     Substantive Allegations**

The FAC does not contain a single substantive allegation specific to Visa Europe. Instead, Plaintiffs allege an antitrust conspiracy against a purported unitary "Visa" entity—one that in fact groups the five distinct Visa corporate entities named as defendants in the FAC. Plaintiffs allege that "Visa" violated the antitrust laws through its "default interchange," "honor all cards," "honor all issuers," and other unspecified rules and anticompetitive conduct. FAC at ¶¶ 43-50, 89-93. Plaintiffs further allege that Visa's rules inflated interchange fees and, as a result, inflated the fees that merchants paid for accepting consumers' Visa card payments, thereby damaging Plaintiffs in violation of the Sherman Act and state antitrust laws. FAC at ¶¶ 123-191. And despite acknowledging that VEL is a foreign, independent corporation owned by its foreign member banks, FAC at ¶ 30, Plaintiffs also allege that the geographic market for all relevant product markets was the United States. FAC at ¶ 108.

4

## ARGUMENT

To avoid dismissal on a Rule 12(b)(6) motion to dismiss for failure to state a claim, Plaintiffs must plead "sufficient factual matter" to state a claim that is at least "plausible on its face." Iqbal, 556 U.S. at 678.  While the Court must accept well-pleaded allegations as true, conclusory allegations are not entitled to the presumption of truth and need not be considered. Id. at 678-79.  Nor should the Court accept allegations contradicted by documents referenced in the complaint or integral to the allegations contained therein, or in publicly filed documents of which a court may take judicial notice. See Halebian v. Berv, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (on a motion to dismiss, court may consider documents attached as exhibits or incorporated by reference); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (on a motion to dismiss, district court may consider documents of which the plaintiffs had notice that were integral to their claim, even if those documents were not incorporated into the complaint by reference).

Absent plausible non-conclusory allegations, a defendant lacks adequate notice of the alleged conduct giving rise to the claims against it. Twombly, 550 U.S. at 565 (antitrust complaint dismissed where it failed to identify alleged conduct of each defendant giving rise to claims); Iqbal, 556 U.S. at 682-83 (court must determine adequacy of factual allegations on defendant-by-defendant basis).  Therefore, Rule 8(a) requires that each defendant be provided with notice sufficient to allow it to identify the nature of the claims against it, the grounds on which the claim rests, and the relief sought. Twombly, 550 U.S. at 555 n.3, 574; Howard v. Mun. Credit Union, 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants [ . . . ] it does require that the allegations be 'sufficient to put each [d]efendant on notice of what they allegedly did or did not do.'" (internal quotation omitted)).

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiffs bear the burden of demonstrating that the Court has jurisdiction over the defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). Moreover, Plaintiffs' threshold burden is to establish prima facie bases of jurisdiction over all defendants. Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999). To decide a motion to dismiss for lack of personal jurisdiction, the Court may rely on materials that are outside the pleadings, including any affidavits submitted by the parties. Barrett v. Tema Dev. (1988), Inc., 463 F. Supp. 2d 423, 425 n.3 (S.D.N.Y. 2006), aff'd, 251 F. App'x 698 (2d Cir. 2007) (district court granted 12(b)(2) motion to dismiss, noting that it had the authority to look to evidence outside the pleadings, including affidavits) (internal citations and quotations omitted).

## I.     PLAINTIFFS' ALLEGATIONS AGAINST VEL AND VESI ARE FACIALLY DEFICIENT

Absent specific factual allegations as to how a particular defendant individually joined or participated in wrongful conduct, group pleading fails to satisfy Rule 8. See Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [Rule 8(a)'s minimum standard]"). Indeed, this Court has rejected the precise "corporate grouping" technique that Plaintiffs have employed here. In Precision Associates, an antitrust class action, plaintiffs similarly defined distinct corporate defendants as a single entity and referred to them in subsequent allegations using only the generic definition. 2011 WL 7053807, at *13-20. This Court held that the complaint failed Rule 8(a)'s basic pleading requirement: where a complaint names multiple defendants, plaintiffs must "'indicate clearly the defendants against whom relief is sought, and the basis upon which relief is sought against the particular defendants.'" Id. at *14, quoting Yucyco, Ltd. v. Republic of Slovenia, 984 F. Supp. 209, 219

6

(S.D.N.Y. 1997) and <u>Mathews v. Kilroe</u>, 170 F. Supp. 416, 417 (S.D.N.Y. 1959); <u>see also</u>
<u>Invamed, Inc. v. Barr Labs., Inc.</u>, 22 F. Supp. 2d 210, 221 (S.D.N.Y. 1998) ("The complaint fails
to support the existence of a conspiracy as it presents no facts that might establish any
participation by the Affiliates in the alleged conspiracy, save including them within the term
'defendants.' . . . Invamed has not alleged that the Affiliates 'acted' in any way, whether
pursuant to a conspiracy or not").

Here, Plaintiffs group together five distinct corporate entities—Visa Inc., Visa U.S.A.
Inc., Visa International, VEL, and VESI—and define them as the generic "Visa" for pleading
purposes. FAC ¶ 34 ("Visa Inc., Visa U.S.A., Visa International, Visa Europe Limited and Visa
Europe Services Inc. are collectively referred to herein as 'Visa.'").  Notably, upon amending
their complaint to add VEL and VESI as defendants, Plaintiffs merely lumped VEL and VESI
into the definition of the collective "Visa" entity that had existed in their initial complaint.
Throughout the FAC, Plaintiffs assert allegations against the generic "Visa" as if all five of these
corporations amounted to a single defendant, which they do not.  Indeed, not a single substantive
allegation was added to, or amended in, the FAC when VEL and VESI were added as
defendants.

As is clear from <u>Precision Associates</u> and numerous similar cases, the FAC as pleaded by
Plaintiffs cannot be sustained against Visa Europe.  That is true as a general matter, but even
more so where VEL and VESI have no corporate affiliation with Visa Inc., Visa U.S.A. Inc., and
Visa International, but instead are mere licensees of the "Visa" brand. <u>See</u> <u>supra</u> at 4.  As a
result, the claims against VEL and VESI should be dismissed for failure to state a claim.

## II.   <u>VEL IS NOT SUBJECT TO IN PERSONAM JURISDICTION IN THIS COURT</u>

To survive a 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiffs must
adequately allege, and ultimately prove, that VEL either has (1) such a substantial, continuous,

and systematic course of business in the forum that it is "at home" there *(i.e.,* general

jurisdiction), or (2) minimum contacts with the forum and that Plaintiffs' claim arises out of

those contacts *(i.e.,* specific jurisdiction). Sonera Holding B.V. v. Çukurova Holding A.S., 750

F.3d 221, 225 (2d Cir. 2014), cert. denied, 2014 WL 2126639 (June 30, 2014).  Conclusory, non-

fact-specific jurisdictional allegations are insufficient to establish even a prima facie basis of

personal jurisdiction. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998).  The

forum state's law, in this case New York's, determines the bounds of personal jurisdiction.

Daimler A.G. v. Bauman, 134 S. Ct. 746, 753 (2014), citing Fed. R. Civ. P. 4(k)(1)(A) (personal

jurisdiction proper over a defendant "who is subject to the jurisdiction of a court of general

jurisdiction in the state where the district court is located").  Furthermore, courts only may

exercise personal jurisdiction when doing so does not offend "traditional notions of fair play and

substantial justice." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853

(2011), quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  In federal antitrust

cases, courts also will consider whether a foreign defendant has sufficient minimum contacts

with the forum and with the United States as a whole such that the exercise of jurisdiction does

not violate the Due Process Clause of the Fifth Amendment. Precision Assocs., 2011 WL

7053807, at *44.

  Plaintiffs have made no attempt to plead a basis for this Court's exercise of general or

specific jurisdiction over VEL.  Plaintiffs' single conclusory allegation relating to VEL in the

191-paragraph FAC, concerning "the effects of [VEL's and VESI's] rules on Interchange Fees

charged and paid in the United States," FAC at ¶ 33, is insufficient to avoid dismissal under

Rule 12(b)(2). See Metro. Life., 84 F.3d at 566, citing Ball v. Metallurgie Hoboken-Overpelt,

S.A., 902 F.2d 194, 197 (2d Cir. 1990) (plaintiff only can defeat a motion to dismiss with legally sufficient allegations of jurisdiction).

### A.  VEL Is Not Subject To General Jurisdiction In This Court

VEL, a U.K. corporation with its principal place of business in the U.K., is not subject to general jurisdiction in New York.  As both the Supreme Court and the Second Circuit clarified earlier this year, a foreign corporation, such as VEL, is only subject to general jurisdiction if its contacts with the forum are so "'continuous and systematic' as to render [it] essentially at home in the forum." Sonera, 750 F.3d at 225, citing Goodyear, 131 S. Ct. at 2851.  The "at home" requirement reflects that "only a limited set of affiliations with a forum" will warrant general jurisdiction. Sonera, 750 F.3d at 225, quoting Daimler, 134 S. Ct. at 760.  The paradigmatic bases of general jurisdiction are the place of incorporation and the principal place of business, because each "ordinarily indicates only one place" and is "easily ascertainable." Id.  Doing business in New York, alone, will not subject a foreign corporation to a forum's general jurisdiction. Daimler, 134 S.Ct. at 762 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

Despite acknowledging that VEL is a foreign corporation based in the U.K. owned by its foreign member banks, Plaintiffs make a single, insufficient jurisdictional allegation regarding VEL: that VEL is being sued "due to the effects of [its] rules on Interchange Fees charged and paid in the United States." FAC at ¶ 33.  But these unspecified alleged "effects" fall far short of establishing a prima facie basis of this Court's general jurisdiction over VEL, and certainly do not satisfy Daimler's and Sonera's requirement that a corporation be "at home" in New York to be subject to its general jurisdiction.  To the contrary: Plaintiffs themselves confirm that VEL is incorporated and has its principal place of business in the United Kingdom; is an association composed only of European banks; and is owned by its European member banks. FAC ¶ 30; see

9

also Decl. of Robin Morton-Fincham ("**Morton-Fincham Decl.**") at ¶¶ 5, 6.  Indeed, even under the arguably less stringent "doing business" test that existed in New York prior to Daimler and Sonera,[4] there is no general jurisdiction in this Court over VEL:

- VEL has no physical presence in New York or anywhere else in the United States, (Morton-Fincham Decl. at ¶ 9);

- VEL does not lease or own any real estate in New York or anywhere else in the United States, (Id.);

- VEL has no offices in New York or anywhere else in the United States, (Id.);

- VEL has no employees or representatives in New York or anywhere else in the United States, (Id.);

- VEL does not manufacture, distribute, or sell products in New York or anywhere else in the United States, (Id.);

- VEL does not offer or provide services to customers in New York or anywhere else in the United States, (Id.);

- VEL does not advertise or otherwise solicit business in New York or anywhere else in the United States, (Id.);

- VEL is owned separately and operates independently from Visa Inc., (Id. at ¶ 7);

- VEL delivers payment services only to European member institutions, (Id. at ¶ 6); and

- VEL crafts and imposes rules only with and upon VEL's European member institutions, (Id. at ¶ 8).

---

[4]    While New York courts have not yet issued a ruling on the issue, it is unlikely that C.P.L.R. § 301's "doing business" standard will survive after Daimler's holding that a court may only exercise general jurisdiction over a foreign corporation that is essentially "at home" in the forum.  See, e.g., Sonera, 750 F.3d 225, at n.2 ("[W]e note some tension between Daimler's 'at home' requirement and New York's 'doing business' test for corporate 'presence,' which subjects a corporation to general jurisdiction if it does business there 'not occasionally or casually, but with a fair measure of permanence and continuity' [ . . . ] Daimler's gloss on due process may lead New York courts to revisit Judge Cardozo's well-known and oft-repeated jurisdictional incantation"); Deutsche Zentral-Genossenscahftsbank A.G. v. UBS A.G., 2014 N.Y. Slip Op. 31019, 2014 WL 1495632, at *5 (N.Y. Sup. Apr. 17, 2014) ("Daimler significantly narrows the parameters for the exercise of general personal jurisdiction, and calls into question the validity of the doing business doctrine and, arguably also, the mere department doctrine.").

See Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany, 328 N.Y.S. 2d 653, 656-57 (1972) (analyzing whether defendants have sufficient contacts to support general jurisdiction); see also Goodyear, 131 S. Ct. at 2851 (same).

### B.   VEL Is Not Subject To Specific Jurisdiction In This Court

Plaintiffs' scant jurisdictional allegations regarding VEL also provide no basis to exercise specific jurisdiction over VEL.  Under New York's long-arm statute, a foreign corporation is subject to New York's specific jurisdiction only if it (1) transacts or contracts to do business within New York; (2) commits a tort in New York; (3) commits a tort outside New York that causes injury within New York; or (4) owns, uses, or possesses real property in New York. N.Y. C.P.L.R. § 302(a) (McKinney 2008).

The only one of these grounds that might be relevant is the third, which also requires that the defendant either (i) regularly does or solicits business or engages in other persistent conduct or derives substantial revenue from New York, or (ii) expects or should reasonably expect the tortious act to have consequences in New York and derives substantial revenue from interstate or international commerce. See N.Y. C.P.L.R. § 302(a)(3) (McKinney 2008).  However, Plaintiffs allege neither that VEL regularly does or solicits business or engages in any other persistent course of conduct in New York, nor that VEL expects or reasonably should expect its rules to have consequences in New York. See id.; see also Daimler, 134 S. Ct. at 754 (a court may exercise specific personal jurisdiction over a defendant only if a suit arises out of or relates to the defendant's contacts with the forum).  Furthermore, Plaintiffs' vague invocation of undefined "effects" in the United States falls far short of making a prima facie showing of § 302(a)(3) jurisdiction, and instead is on par with the assertions that this Court rejected in Precision Associates. 2011 WL 7053807, at *43.  There, this Court found no specific jurisdiction where, like here, plaintiffs alleged that the defendants' conduct had unspecified "consequences in New

11

York." See id.; see also Vista Food Exchange v. Joyce Foods, Inc., 1996 WL 122419, at *3 (S.D.N.Y. Mar. 20, 1996) ("A [§ 302(a)(3)] injury does not occur in New York just because the plaintiff is domiciled or does business there, even when that plaintiff suffers some economic harm in New York because of defendant's out-of-state conduct."). Accordingly, there is no personal jurisdiction under C.P.L.R. § 302.

      VEL is not subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) either, because Plaintiffs have not alleged that VEL has, and in fact VEL actually lacks, minimum contacts with the United States. See Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) confers personal jurisdiction only where a defendant does not have sufficient contacts with any particular state, but does with the United States as a whole, such that personal jurisdiction is proper. See Dardana Ltd. v. Yuganskneftegaz, 317 F.3d 202, 207 (2d Cir. 2003), citing Chew v. Dietrich, 143 F.3d 24, 27-28 (2d Cir. 1998). The rule acts as a federal long-arm statute where (1) the plaintiffs' claim arises under federal law; (2) the defendant lacks sufficient contacts to be subject to jurisdiction in any particular state; and (3) the federal court's exercise of personal jurisdiction over the defendant does not conflict with the Constitution or other federal law. Precision Assocs., 2011 WL 7053807, at *44. But, as discussed above, Plaintiffs have not alleged, and cannot allege, that these elements are met.

      **C.**    **Exercising In Personam Jurisdiction Over VEL Would Violate Due Process**

      Even assuming that Plaintiffs had alleged sufficient facts to establish a statutory basis for personal jurisdiction, due process considerations would prohibit exercising jurisdiction over VEL. See Metro. Life, 84 F.3d at 567 (due process test for personal jurisdiction has threshold "minimum contacts" and second "reasonableness" inquiries). Once a plaintiff satisfies its threshold burden of alleging a defendant has minimum contacts with the forum, the Second Circuit applies a "sliding scale" to determine whether exercising jurisdiction is constitutionally

"reasonable." <u>Metro. Life</u>, 84 F.3d at 569, <u>citing</u> <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 210 (1st Cir. 1994). "[T]he weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." <u>Id.</u>; <u>see also</u> <u>Int'l Shoe</u>, 326 U.S. at 316 (reasonableness stage of due process inquiry asks whether exercise of in personam jurisdiction comports with "traditional notions of fair play and substantial justice").

The FAC compels a finding of unreasonableness here. As discussed <u>supra</u> in Section II.A., Plaintiffs have not alleged any VEL contacts with New York or the United States.[5] VEL has not purposefully injected itself into either this forum or into the United States as a whole. <u>See</u> <u>Metro. Life</u>, 84 F.3d at 568, <u>citing</u> <u>Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.</u>, 480 U.S. 102, 112-14 (1987) (court may only exercise jurisdiction where a defendant has "purposefully availed" itself of the forum's privileges). Furthermore, Plaintiffs have "not suggested, much less shown, any substantive social policies that would be furthered by" haling into a U.S. court a U.K.-incorporated and Europe-focused business that conducts no activity in and invokes no privileges of the United States. <u>See</u> <u>Metro. Life</u>, 84 F.3d at 575. Therefore, even if exercising personal jurisdiction were possible in this case, doing so would violate notions of "fair play and substantial justice" and thus be unconstitutionally unreasonable. <u>See</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985), <u>quoting</u> <u>Int'l Shoe</u>, 326 U.S. at 320.

VEL performs no acts in New York or the United States and does not target the American market. Therefore, the Due Process clause prohibits this Court from exercising in personam jurisdiction over VEL, and this Court should grant VEL's 12(b)(2) Motion to Dismiss.

---

[5]   Mere "effects" of wholly European acts, contracts, and other activity cannot satisfy Plaintiffs' prima facie burden of establishing minimum contacts. <u>See</u> <u>In re Terrorist Attacks on September 11, 2001</u>, 718 F. Supp. 2d 456, 479 (S.D.N.Y. 2010) (under effects test, defendants' donations to Muslim charities, allegedly made while knowing the money would be used to finance the September 11th attacks, established contacts too remote and attenuated to establish personal jurisdiction); <u>see also</u> <u>Goodyear</u>, 131 S. Ct. at 2854, <u>citing</u> <u>Hanson v. Deckla</u>, 357 U.S. 235, 253 (1958) (domestic effects, alone, are insufficient to confer jurisdiction).

**III.   PLAINTIFFS' ALLEGATIONS DO NOT MEET
        THE REQUIREMENTS OF THE FTAIA**

As the Supreme Court has made clear, the FTAIA limits the Sherman Act's reach to

claims involving (1) purely domestic commerce, (2) import commerce, and/or (3) conduct that

(a) has a "direct, substantial, and reasonably foreseeable" effect on U.S. commerce and (b)

whose effect "gives rise" to the plaintiff's Sherman Act claim. See 15 U.S.C. § 6(a);[6] F.

Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 161 (2004).  In considering a motion

to dismiss on FTAIA grounds, a court reviews whether the face of the complaint alleges facts

sufficient to state a claim that is not removed from the Sherman Act's scope by the FTAIA. See

Precision Assocs., 2011 WL 7053807, at *33, citing Poodry v. Tonawanda Band of Seneca

Indians, 85 F.3d 874, 887 n.15 (2d Cir. 1996).  The Second Circuit recently ruled in Lotes Co.,

Ltd. v. Hon Hai Precision Indus. Co., Ltd., 753 F.3d 395 (2d Cir. 2014), that the FTAIA's

limitations on antitrust claims are substantive rather than jurisdictional.  That, however, does not

eliminate Plaintiffs' burden of sufficiently pleading allegations which state a plausible claim for

relief under the Sherman Act, as required by Twombly and Iqbal.

Here, any purported claims against Visa Europe must arise from conduct involving

foreign, rather than domestic, commerce, because foreign conduct is the only conduct in which

Visa Europe engages.  Visa Europe is a European payment service provider that provides

services exclusively to its European member financial institutions, and, pursuant to its

Framework Agreement with Visa Inc., is granted trademark and technology licenses for use only

---

[6]      The statute provides: "Sections 1 through 7 [of the Sherman Act] shall not apply to conduct involving trade
or commerce (other than import trade or import commerce) with foreign nations unless—(1) such conduct
has a direct, substantial, and reasonably foreseeable effect—(A) on trade or commerce which is not trade or
commerce with foreign nations, or on import trade or import commerce with foreign nations; or (B) on
export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in
the United States; and (2) such effect gives rise to a claim under the provisions of Sections 1 through 7." 15
U.S.C. § 6(a).

within, and performs certain services for Visa Inc. only within, *the region of the European Union and a number of other European countries*. S-1 at 28, 183; see also supra at 3.   Plaintiffs do not allege, and there can be no argument, that the claims against Visa Europe arise from its engagement in domestic commerce.   Consequently, in order to state a claim against Visa Europe that is not foreclosed by the FTAIA, Plaintiffs are required to adequately allege either that their claims against Visa Europe arise from conduct involving import commerce or from foreign Visa Europe conduct that has a "direct, substantial, and reasonably foreseeable" effect on U.S. commerce that gives rise to their Sherman Act claims.   Plaintiffs allege neither.

### A.   The "Import Commerce" Exception Does Not Apply

As an initial matter, the FTAIA's import commerce exception does not apply to Plaintiffs' claims against Visa Europe because Plaintiffs never allege that Visa Europe engages in import commerce.   Furthermore, Plaintiffs could not allege that Visa Europe engages in import commerce as defined by the FTAIA.   The import commerce exception to the FTAIA's limitation on the Sherman Act is a narrow one.   A company is an importer only if it directly brings items or services into the United States from abroad. Turicentro, S.A. v. Am. Airlines, 303 F.3d 293, 303 (3d Cir. 2002), overruled on other grounds, Animal Science Products, Inc. v. China Minmetals Corp., 654 F.3d 462 (3d Cir. 2011).   A service involves import commerce only if it is directed at the United States import market.   Conduct with an incidental effect on imports to the United States is not enough. Kruman v. Christie's Int'l PLC, 284 F.3d 384, 394 (2d Cir. 2002), abrogated on other grounds, Empagran, 542 U.S. at 155 (Sherman Act applies to foreign conduct that only if it is intended to and does in fact produce "some substantial effect" in the United States).

Visa Europe is strictly a *provider of payment services* and it provides those services only to its European member financial institutions in Europe. Therefore, Plaintiffs could not plausibly

allege that Visa Europe imports any products or services into the United States or that its services are directed at the United States import market. Moreover, any incidental effect of Visa Europe's entirely foreign provision of payment services to European financial institutions (were Plaintiffs to state such allegations, which they have not) would be insufficient to bring Visa Europe's conduct within the import commerce exception. See Kruman, 284 F.3d 384.

### B.     The "Domestic Effects" Exception Does Not Apply

Having failed to allege facts that would support the argument that Visa Europe's wholly foreign conduct qualifies under the import commerce exception, Plaintiffs could only state an FTAIA-compliant Sherman Act claim by plausibly alleging that Visa Europe's conduct in Europe meets the "domestic effects" test. In order to do so, Plaintiffs would need to allege that Visa Europe's foreign conduct has a direct, substantial, and reasonably foreseeable effect in the United States that gives rise to Plaintiffs' antitrust claims. See 15 U.S.C. § 6(a)(1)(A); Empagran, 542 U.S. at 161. Plaintiffs have not done so.

In the FAC, Plaintiffs make a sole, wholly conclusory allegation in this regard: that VEL and VESI "are sued due to the effects of their rules on Interchange Fees charged and paid in the United States." FAC ¶ 33. Specific allegations of Visa Europe conduct, and any purported effects thereof, are entirely absent from the FAC. Although Plaintiffs make numerous general references to various "Visa" rules, the only rules that Plaintiffs identify are Visa U.S.A. Inc. Operating Regulations, Volume 1 – General Rules (Nov. 15, 2008) and Visa International Operating Regulations (October 15, 2010)—*never any Visa Europe rules*. See FAC at ¶¶ 54, 56, 58, 92. Plaintiffs' only allegation as to Visa Europe's conduct identifies neither whose acts— VEL's or VESI's—nor which rules have purported "effects" on domestic commerce, nor whether such effects are direct, substantial, and reasonably foreseeable enough to satisfy the FTAIA's requirements. See Empagran, 542 U.S. at 161. Furthermore, none of the instances

16

Plaintiffs cites as establishing, for example, "Visa's" "market power" and "anti-competitive conduct," in fact involves Visa Europe in any way. FAC ¶¶ 45, 47, 59, 63-72, 78, 79, 80, 83. Allegations far less generic and conclusory than Plaintiffs' have been rejected by the Supreme Court in Twombly and Iqbal and should be similarly disregarded here.

Even if Plaintiffs' single conclusory allegation as to the effects of Visa Europe's foreign conduct were considered, that allegation would be insufficient to demonstrate that Plaintiffs' claims against Visa Europe fall within the "domestic effects" exception to the FTAIA.  In Lotes, the Second Circuit recently clarified that to show a "direct, substantial and reasonably foreseeable" effect, Plaintiffs must plausibly allege a "reasonably proximate causal nexus" between the foreign conduct and the alleged effect on domestic commerce. See 753 F.3d at 412. The court explained that the "reasonably proximate causal nexus" standard excludes "remote injuries:" injuries with superseding causes, injuries outside the scope of risk created by defendants' conduct, and injuries that are not a natural or probable consequence of defendants' conduct. See id. at 411.  Thus, Lotes is consistent with prior decisions finding that indirect or speculative effects of foreign conduct in the United States are insufficient to meet the domestic effects exception. See Sniado v. Bank Austria A.G., 174 F. Supp. 2d 159, 164 (S.D.N.Y. 2001), aff'd, 378 F.3d 210, 213 (2d Cir. 2004) (overcharge for services performed abroad is a foreign effect, even if injuries are suffered by an American); In re Intel Corp. Microprocessor Antitrust Litig., 452 F. Supp. 2d 555, 561 (D. Del. 2006) (alleged domestic effects are not direct when they are premised on speculative and changing factors; "ripple effects" in U.S. are insufficient).

Plaintiffs' allegation that Visa Europe's "rules"—rules that necessarily are crafted and imposed within only Europe and upon only Visa Europe's European member institutions— somehow affect "Interchange Fees charged and paid in the United States" does not meet the

17

"proximate causal nexus" standard for domestic effects articulated in Lotes. See 753 F.3d at 396. Plaintiffs' sole allegation provides no clue as to what causal nexus, if any, might exist between Visa Europe's European rules and any fees paid in the United States, let alone that such a nexus qualifies as "reasonably proximate." If anything, Plaintiffs' allegation at best suggests some undefined, unknown, and highly remote nexus that fails the "reasonably proximate causal nexus" test. Plaintiffs cannot require Visa Europe to speculate as to what proximate causal nexus between its conduct and United States commerce might be *imagined* by Plaintiffs; Plaintiffs are required to state such allegations with adequate specificity to demonstrate that their claim is not removed from the Sherman Act's reach by the FTAIA. Plaintiffs have not done so. Consequently, their claims should be dismissed.

## IV.    **PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

Finally, the Sherman Act's statute of limitations bars any claims against Visa Europe that arose before June 13, 2010. A private antitrust action must be brought within four years of its accrual. See 15 U.S.C. § 15b. Accrual occurs when a defendant commits an act that causes plaintiffs' antitrust injury. Higgins v. N.Y.S.E., Inc., 942 F.2d 829, 832 (2d Cir. 1991). Neither VEL nor VESI was named as a defendant in this action until June 13, 2014. See FAC. Plaintiffs do not and cannot allege fraudulent concealment, relation back, or class action tolling in order to extend the limitations period. Therefore, the statute of limitations bars all claims brought against Visa Europe for pre-June 13, 2010 conduct.

The doctrine of fraudulent concealment cannot toll Plaintiffs' claims against Visa Europe because Plaintiffs fail to allege with specificity the necessary facts: that (1) Visa Europe concealed the antitrust violation's existence; (2) Plaintiffs remained ignorant of the violation until sometime within the statute of limitations; and (3) Plaintiffs' continuing ignorance was not the result of a lack of diligence. See Precision Assocs., 2011 WL 7053807, at *45-46 (Plaintiffs

18

must adequately allege facts satisfying these factors to invoke fraudulent concealment tolling); see also In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 60 (2d Cir. 1998) (listing factors).[7] Even if they had attempted to do so, Plaintiffs could not allege that Visa Europe ever concealed the alleged antitrust violation's existence or that Plaintiffs were ignorant of the alleged violations: discovery in this class action began in 2005 and the instant allegations comprise an "offshoot" of a settlement of which Your Honor approved in 2003. See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig., 05-MD-1720 (JG) (JO) (E.D.N.Y. Dec. 13, 2013); see also In re Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503 (E.D.N.Y. 2003).  Moreover, because the identities and corporate structures of all Defendants have been public knowledge throughout the statutory period, see S-1 passim, there can be no argument that Plaintiffs were ignorant of Visa Europe or any purported involvement of Visa Europe in the alleged scheme.  Therefore, Plaintiffs cannot invoke the doctrine of fraudulent concealment to toll their statutory period.

Plaintiffs also cannot invoke the relation-back doctrine.  Plaintiffs, who have been on notice of Visa Europe's existence and relationship with the other Visa entities, cannot claim they failed to name VEL or VESI due to any mistake regarding their proper identities. See Precision Assocs., 2011 WL 7053807, at *45-54, citing Fed. R. Civ. P. 15(c)(1)(B) (a claim against a new defendant will only relate back if the claim arose out of the same conduct set forth in the original pleading, the defendant had adequate notice of the claim, and the new defendant was not initially named because of a mistake regarding its identity).

Furthermore, because Visa Europe was not named in the MDL 1720 class action from which Wal-Mart opted out, Plaintiffs cannot benefit from class action tolling against Visa

---

[7] Furthermore, Rule 9(b)'s heightened pleading standard applies to allegations of fraudulent concealment. See Precision Assocs., 2011 WL 7053807, at *50.

Europe. See Arneil v. Ramsey, 550 F.2d 774, 782 n.10 (2d Cir. 1977) (overruled on other grounds) ("Nothing in [Supreme Court precedent] suggests that the statute be suspended from running in favor of a person not named as a defendant in the class suit, and we decline so to extend this rule.  A different conclusion would not comport with reason.").

Because Plaintiffs' claims are subject to a four-year limitations period and Plaintiffs have provided no grounds to extend the statute of limitations, all claims against Visa Europe that arose before June 13, 2010 are barred.  Furthermore, the few Visa Europe-related facts that Plaintiffs do allege, coupled with the absence of any facts about any alleged anti-competitive acts affecting the U.S. market, fail to bring Plaintiffs' claims against Visa Europe within the statutory period at all.[8]

---

[8]   Plaintiffs' own allegations suggest that Visa Europe had no incentive to commit any acts in furtherance of the alleged conspiracy within the statutory period.  Plaintiffs have alleged no anti-competitive acts committed by Visa Europe, nor that any such acts occurred between June 13, 2010 and November 12, 2012. See FAC at ¶ 1.  But Plaintiffs do plead facts suggesting that Visa Europe had no incentive or ability to participate in the U.S.-based conspiracy they have alleged and that, at the very least, Visa Europe would have withdrawn from any alleged conspiracy as early as 2004—well before the statutory period began.  Visa Europe acquired Visa International's EU business, operations, assets, and liabilities on July 1, 2004: nearly a full decade before Plaintiffs added Visa Europe as defendants in the instant complaint. FAC at ¶ 32.  Plaintiffs, themselves, admit that while Visa U.S.A. and Visa International became affiliates of Visa Inc. in the 2007 restructuring, Visa Europe remained a wholly independent foreign company limited to the European market and owned by its European member banks. FAC at ¶¶ 37, 30; see also S-1 at 7, 43-44, 59 177.  This independent company, limited to the European market by the Framework Agreement, simply had no reason to act in restraint of U.S. trade during the statutory period.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs' claims against VEL and VESI should be dismissed in their entirety with prejudice.

Dated:    New York, NY
          September 5, 2014

                                    Respectfully submitted,

                                    Linklaters LLP

                                    By:   /s/ James R. Warnot, Jr.
                                    James R. Warnot, Jr.
                                    Kate Z. Machan
                                    1345 Avenue of the Americas
                                    New York, NY 10105
                                    (212) 903-9000
                                    (212) 903-9100 (fax)

                                    *Attorneys for Visa Europe Limited and Visa Europe Services Inc.*